```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X

PATRICIA ZAPPONE and KERRY MITCHELL,    :
                                               04 Civ. 7232 (WCC)
                    Plaintiffs,         :

        - against -                     :        OPINION
                                                 AND ORDER
MMZ ASSOCIATES, INC. and MARK ZETTL,    :

                    Defendants.         :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                                LAW OFFICES OF DAVID M. LIRA
                                **Attorneys for Plaintiff**
                                  **Patricia Zappone**
                                595 Stewart Avenue, Suite 315
                                Garden City, NY 11530

DAVID M. LIRA, ESQ.

    Of Counsel

                                LITTLER MENDELSON, P.C.
                                **Attorneys for Defendants**
                                885 Third Avenue, 16th Floor
                                New York, NY 10022

ANDREW P. MARKS, ESQ.
MICHAEL P. PAPPAS, ESQ.

    Of Counsel

**CONNER, Senior D.J.:**

Plaintiff Patricia Zappone commenced this action[1] against defendants MMZ Associates, Inc. ("MMZ") and Mark Zettl (collectively, the "defendants") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, ("Title VII"), the New York State Human Rights Law, N.Y. EXEC. LAW §§ 290 *et seq.*, (the "NYSHRL"), and the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510 *et seq.*, (the "ECPA").[2] Plaintiff alleges that defendants: (1) discriminated against her by enforcing a covenant not to compete only against her; (2) discriminated against her by permitting a hostile work environment; (3) unlawfully terminated her employment; and (4) unlawfully intercepted her private e-mail communications without her knowledge or consent. Defendants now move for an order staying or dismissing this action as to Zappone and compelling her to submit to arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, (the "FAA"). For the reasons stated hereinafter, defendants' motion to compel arbitration is granted and Zappone's claims are hereby dismissed.

**BACKGROUND**

MMZ is a New York corporation with a principal place of business in New York. (Complt. ¶ 8.) MMZ is engaged in the business of selling general liability and group employee benefit insurance policies. (Lira Decl., Ex. 2 ¶ 2.) Defendant Zettl is alleged to be MMZ's sole shareholder. (Complt. ¶ 10.) Zappone and Mitchell are both residents of New York. (*Id.* ¶¶ 6, 7.)

---

[1] Kerry Mitchell is also named as a plaintiff in the Complaint. However, the present motion does not involve Mitchell. Therefore, all references herein to "plaintiff" are to plaintiff Zappone.

[2] This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

1

Plaintiff and MMZ entered into an employment agreement (the "Employment Agreement" or "Agreement") on December 3, 2001. (*Id.* ¶ 16.) The Employment Agreement contains an arbitration clause which provides as follows:

> [a]ny dispute, difference, disagreement or controversy between or among the parties hereto, arising out of or in connection with this Agreement or the interpretation of the meaning of this Agreement, shall be referred to a single arbitrator agreed upon by the parties hereto. If the parties to the dispute are unable to agree upon the selection of such arbitrator, then a single arbitrator shall be appointed by the American Arbitration Association, or by an association agreed to by the parties, pursuant to its existing commercial arbitration rules. Such arbitration shall take place in New York, unless otherwise agreed upon by all parties. Every such dispute, difference, disagreement or controversy which is submitted to arbitration shall be dealt with and disposed of pursuant to the commercial arbitration rules of the American Arbitration Association, and every award or determination therein shall be final and binding upon all of the parties. There shall be no appeal from such award or determination, and judgment thereon may be entered in any court of competent jurisdiction.

(Employment Agmt. ¶ 6 (provided as Zettl Aff., Ex. A).) The Employment Agreement makes reference to a separate non-solicitation agreement (the "Non-Solicitation Agreement"), which plaintiff and MMZ entered into as part of the terms of the Employment Agreement. (*Id.* ¶ 10.) The Non-Solicitation Agreement contains, *inter alia*, a covenant not to compete.[3] (*Id.*, Ex. 3.) The terms of the Non-Solicitation Agreement are annexed to and incorporated into the terms of the Employment Agreement, and breach of the Non-Solicitation Agreement is deemed a breach of the Employment Agreement. (*Id.*)

Plaintiff was employed as Assistant Vice President of Group Benefits, and her responsibilities included selling health insurance to existing customers and soliciting new customers for MMZ. (*Id.* ¶¶ 13, 14.) In October of 2002, MMZ terminated plaintiff's employment for

---

[3] The Non-Solicitation Agreement prohibits plaintiff from using or disclosing MMZ's confidential information, misusing MMZ's resources for purposes not beneficial to MMZ, or diverting MMZ's business opportunities for her own benefit. (Lira Decl., Ex. 2 ¶ 7.)

2

violating company policy. (Lira Decl., Ex. 2 ¶ 13.) On November 6, 2002, prior to the commencement of the instant action, defendants brought an action against plaintiff in the Supreme Court of the State of New York, County of Westchester. (*Id.*) According to defendants, either prior to or immediately after plaintiff's termination she began to solicit MMZ's customers and prospects for purposes of making sales of commercial insurance, in breach of the Non-Solicitation Agreement and the Employment Agreement. (*Id.* ¶ 14.) Subsequently, on June 4, 2003, plaintiff filed a charge of discrimination with the United States Equal Opportunity Commission. (Complt. ¶ 3.) Plaintiff received a Notice of Right to Sue letter on June 28, 2004 and then commenced the present action on September 10, 2004. (*Id.* ¶ 4.)

Defendants now seek an order compelling plaintiff to submit her claims to arbitration pursuant to the arbitration clause in the Employment Agreement. Plaintiff argues, *inter alia*, that even if there was an agreement to arbitrate, it is no longer effective because defendants waived their right to arbitrate by bringing their state court action.

## DISCUSSION

### I.  Standard of Review

The FAA provides in relevant part: "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA manifests a strong federal policy favoring arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24

(1983)). In fact, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id*. at 24-25. Accordingly, even where an arbitration clause requires the arbitration of disputes involving a federal statute, the parties to a valid arbitration agreement are compelled to arbitrate "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum . . . ." *Id*. at 28 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 637 (1985)).

First, we will consider whether it would be appropriate to compel arbitration in the present case. Then, if necessary, we will consider whether defendants have waived their right to arbitrate.

## II. Whether Arbitration is Appropriate

When determining whether to compel arbitration courts in the Second Circuit consider the following factors: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) whether Congress intended the plaintiff's statutory claims to be non-arbitrable; and (4) whether, if not all the claims are arbitrable, to stay the proceedings on the balance of the claims. *See Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998) (citing *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 844 (2d Cir. 1987)); *Bird v. Shearson Lehman/Am. Express, Inc.*, 926 F.2d 116, 118 (2d Cir. 1991).

### A. Whether the Parties Agreed to Arbitrate

Whether the parties agreed to arbitrate is determined by state contract law. *See First Options*

*of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (noting that "[w]hen deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts"); *see also* 9 U.S.C. § 2 (providing that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract"). In the case at bar, the parties do not dispute the choice of law provision,[4] nor do they dispute whether an underlying contract exists. Accordingly, New York law applies.

In interpreting an employment agreement, the Second Circuit has found that in the "absence of fraud, or other wrongful act[s] on the part of another contracting party, a party 'who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them.'" *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2002) (quoting *Metzger v. Aetna Ins. Co.,* 227 N.Y. 411, 416, 125 N.E. 814 (1920)). Here, plaintiff signed the Employment Agreement containing the arbitration clause and does not now claim fraud or "other wrongful acts" on the part of defendants. Therefore, we will presume that she was aware of the contents of the Employment Agreement and assented to them.

Moreover, "[a] party resisting arbitration on the ground that no agreement exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4." *Manning v. Energy Conversion Devices, Inc.,* 833 F.2d 1096, 1103 (2d Cir. 1987) (citing *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d Cir. 1972), *overruled on other grounds by Northern Tankers (Cyprus) v. Blackstrom*, 967 F. Supp. 1391

---

[4] The Employment Agreement provides, in relevant part, that "the provisions of this Agreement are to be construed, administered and enforced in accordance with the laws of New York without regard to principles of conflict of laws." (Employment Agmt. ¶ 8.)

(2d Cir. 1997)). Plaintiff has not submitted any evidentiary facts to support a claim that no arbitration clause exists; in fact, she explicitly admits that an arbitration clause does exist but attempts to avoid arbitration by incorrectly construing the actual words of the clause. (Pl. Mem. Opp. Mot. Compel at 3-6.)

Although plaintiff does not dispute the existence of an underlying contract or agreement to arbitrate, she does attempt to argue that the arbitration clause does not bind her to arbitration. (*Id*.) The arbitration clause contained in the Employment Agreement states that claims under the Agreement "shall be referred to a single arbitrator agreed upon by the parties." (Employment Agmt. ¶ 6.) Plaintiff argues that this wording requires her only to "engage in negotiations concerning the arbitration of her claims." (Pl. Mem. Opp. Mot. Compel at 4.) Plaintiff further argues that if, after such "negotiations," the parties are not able to agree upon a single arbitrator willing to handle the arbitration she would not be obligated to arbitrate her claims. (*Id*. at 5.) Plaintiff also contends that the arbitration clause establishes a "three step process, which may or may not lead to arbitration." (*Id*. at 6.) However, not only is this reasoning illogical and a misinterpretation of the clause, but it also fails to consider the immediately following language, which provides that "[i]f the parties to the dispute are unable to agree upon the selection of such arbitrator, then a single arbitrator shall be appointed by the American Arbitration Association." (Employment Agmt. ¶ 6.) Thus, despite plaintiff's argument to the contrary, this Court finds that the first part of the Second Circuit's analysis is satisfied: the parties did agree to arbitrate.

      B.    **Whether the Claims Are Within the Scope of the Agreement**

The arbitration clause in the Employment Agreement states in part that "[a]ny dispute,

difference, disagreement or controversy between or among the parties hereto, arising out of or in connection with this Agreement . . . shall be referred to a single arbitrator." (*Id*.) The Second Circuit has found this to be a "prototypical" broad arbitration clause. *See Oldroyd*, 134 F.3d at 76-77; *see also Collins & Aikman Prod. Co. v. Building Sys.*, 58 F.3d 16, 19 (2d Cir. 1995) (holding that a clause submitting to arbitration "any claim or controversy arising out of or relating to the agreement" is the paradigm of a broad clause); *McDonnell Douglas Fin. Corp. v. Pennsylvania Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988) (noting the distinction between "broad" clauses that purport to refer to arbitration all disputes arising out of a contract and "narrow" clauses that limit arbitration to specific types of disputes).

The "existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (citations omitted) (emphasis added). Plaintiff has submitted no evidence to rebut this presumption.

To determine whether certain claims are within the scope of an agreement courts "focus on the factual allegations in the complaint rather than the legal causes of action asserted. If the underlying claims touch matters covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco*, 815 F.2d at 846 (citations omitted). Here, plaintiff alleges that MMZ violated Title VII, the NYSHRL and the ECPA because of various acts that occurred while she was employed by MMZ. Since plaintiff's employment at MMZ stems from the Employment Agreement, the alleged acts of, *inter alia*, discrimination that occurred while she was working there obviously concern the Employment Agreement. *See McDonnell Douglas*,

7

858 F.2d at 832 (noting that a broad arbitration clause refers all disputes arising out of an employment contract to arbitration). Furthermore, the Non-Solicitation Agreement is specifically annexed to and incorporated into the Employment Agreement, and therefore any claims plaintiff has regarding the Non-Solicitation Agreement undoubtedly arise out of the Agreement and fall within its scope. (Employment Agmt. ¶ 10.) Consequently, we are unable to conclude that the presumption in favor of arbitration has been overcome in this case.[5] *See Oldroyd*, 134 F.3d at 77. Accordingly, the second part of the Second Circuit's analysis is satisfied: the claims are within the scope of the arbitration clause.

### C. Whether the Federal Statutory Claims are Non-Arbitrable

"It is well-settled that federal statutory claims can be the subject of arbitration, absent a contrary congressional intent." *Id*. at 78. (noting that the court's duty to enforce arbitration agreements is "not diminished where a party bound by an agreement raises a claim founded on statutory rights") (citing *Gilmer*, 500 U.S. at 26; *Shearson/Am. Express v. McMahon*, 482 U.S. 220, 226 (1987)). However, Congress "may override the presumption in favor of arbitration by manifesting its intention to do so." *Oldroyd*, 134 F.3d at 77-78. Therefore, "[i]f such an intention exists, it will be discoverable in the text of the statute, its legislative history, or an inherent conflict between arbitration and the statute's underlying purposes." *Id.* (citing *Gilmer*, 500 U.S. at 26) (internal quotations omitted). Additionally, the party seeking to avoid arbitration has the burden of

---

[5] Furthermore, while courts are directed to resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration," here no such expansive interpretation is necessary because the language of the present arbitration clause is clear on its face. *Moses H. Cone*, 460 U.S. at 24-25.

showing that Congress intended to preclude arbitration. *Id*. (citing *Shearson*, 482 U.S. at 227).

Plaintiff cites nothing in the text or legislative history of Title VII or the ECPA that explicitly precludes arbitration. Moreover, the Second Circuit has held that Title VII claims are subject to arbitration. *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 204-06 (2d Cir. 1999); *see also Martens v. Smith Barney Inc.*, 238 F. Supp. 2d 596, 601 (S.D.N.Y. 2003) (holding that "it is clearly settled law within the Second Circuit that arbitration clauses can be enforced in Title VII cases"). Additionally, we have discovered no cases finding ECPA claims to be non-arbitrable. Accordingly, we find that the third part of the Second Circuit's analysis is satisfied: plaintiff's federal statutory claims are arbitrable.

### D.  **Whether the State Law Claims Are Arbitrable**

In addition to the federal statutory claims, plaintiff also alleges discrimination in violation of the NYSHRL. The Court of Appeals of New York found that "[w]here the right is predicated on a State or local statute rather than on a congressional enactment . . . the courts are obliged to draw an analogy to the equivalent Federal Law, where possible, and to consider Congress' intentions with regard to the rights created by that law." *Fletcher v. Kidder Peabody & Co.,* 81 N.Y.2d 623, 690, 619 N.E.2d 998, 601 N.Y.S.2d 686 (1993). Other courts in this district have agreed, finding that "the arbitrability of a discrimination claim under local law, such as the New York Human Rights Law, is determined by reference to Congressional intent" and that "[c]ongressional intent favors arbitrating discrimination claims." *Rice v. Brown Bros. Harriman & Co.*, No. 96 Civ. 6326, 1997 WL 129396, at \*3 (S.D.N.Y. Mar. 21, 1997); *see also Cicchetti v. Davis Selected Advisors*, No. 02 Civ. 10150, 2003 WL 22723015, at \*2 (S.D.N.Y. Nov. 17, 2003) (finding claims under the New York City

Human Rights Law to be arbitrable); *Bishop v. Smith Barney, Inc.*, No. 97 Civ. 4807, 1998 WL 50210, at *10 (S.D.N.Y. Feb. 6, 1998) (finding that "[c]ase law has established that federal and state statutory employment discrimination claims are arbitrable"). Accordingly, we conclude that plaintiff's NYSHRL claim is arbitrable.

Because we have concluded that plaintiff's Title VII, ECPA and NYSHRL claims are all arbitrable and within the scope of the arbitration clause, the fourth part of the Second Circuit's analysis: whether to stay the balance of the proceedings pending arbitration, is not applicable here. Accordingly, we conclude that it is appropriate for the Court to compel arbitration of plaintiff's claims in the present case. However, we must now consider whether defendants have waived their right to compel arbitration of plaintiff's claims.

### III. <u>Waiver of the Right to Arbitrate</u>

As mentioned above, there is a strong federal policy favoring arbitration. *See Moses H. Cone*, 460 U.S. at 24-25. Because of this strong federal policy, "any doubts concerning whether there has been a waiver [of the right to arbitrate] are resolved in favor of arbitration." *PPG Indus. Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). The Second Circuit has often stated that "'waiver of arbitration is not to be lightly inferred.'" *Id.* (quoting *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) (citations omitted)).

After plaintiff's employment was terminated, but before plaintiff filed the present action, MMZ commenced an action against her in New York State Supreme Court alleging that she had breached the Non-Solicitation Agreement during and after her employment. (Pl. Mem. Opp. Mot. Compel at 2.) Plaintiff argues that defendants' commencement of this prior state action was either

10

an offer to amend the Employment Agreement, eliminating the arbitration clause, or a breach of the arbitration clause. (*Id*. at 5-6.) Nothing in the record shows that defendants have made an offer to amend the Employment Agreement to eliminate the arbitration clause. To the contrary, the record reflects defendants' desire to enforce the arbitration clause. (Defs. Mem. Supp. Mot. Compel at 2.) However, prior litigation may waive a party's right to compel arbitration. *See Doctor's Assoc., Inc. v. Bickel*, 66 F.3d 438 (2d Cir. 1995).

The Second Circuit's position has evolved over the past thirty years with respect to waiver of an arbitration clause as a defense. *Id*. 456. Initially, the Second Circuit reasoned that "issues of waiver, like issues of fraud in the inducement of the entire contract, were properly resolved by the arbitrators, not in the district court." *Id*. at 454 (citing *World Brilliance Corp. v. Bethlehem Steel Co.*, 342 F.2d 362, 364-65 (2d Cir. 1965). More recently, however, it appears that the Second Circuit has begun to "distinguish between cases where the waiver defense was based on prior litigation by the party seeking arbitration - when the court should decide the issue of waiver - and those when the defense was based on other actions." *Doctor's Assoc.*, 66 F.3d at 456; *see also Kramer v. Hammond*, 943 F.2d 176 (2d Cir. 1991) (holding that a party who had engaged in litigation in state court had waived his right to compel arbitration). Accordingly, because defendants engaged in prior litigation, we are permitted to reach the issue of waiver. *See Doctor's Assoc.*, 66 F.3d at 456 (noting that, in light of *Kramer,* district courts may reach the question of waiver whenever a party seeking arbitration engaged in any prior litigation).

As mentioned above, the defense of waiver must not be lightly inferred. *See PPG Indus.,* 128 F.3d at 107 (quoting *Rush*, 779 F.2d at 887). Consequently, only prior litigation of the same legal and factual issues as those the party now wants to arbitrate will result in a waiver of the right to

11

arbitrate. *See Doctor's Assoc., Inc. v. Distajo*, 107 F.3d 126, 133 (2d Cir. 1997), *cert. denied*, 522 U.S. 948 (1997); *see also Kramer*, 943 F.2d at 178 (finding waiver of right to arbitrate based in part on party's prior litigation in an "identical" suit); *Sweater Bee By Banff, Ltd. v. Manhattan Indus.,* 754 F.2d 457, 461 (2d Cir. 1985) (finding that only "litigation of substantial issues going to the merits may constitute a waiver of arbitration").

Moreover, as a result of the strong federal policy favoring arbitration, even if a party has engaged in prior litigation of the same legal and factual issues, waiver of the right to arbitrate will be found only if prejudice to the non-moving party is also demonstrated. *See Rush*, 779 F.2d at 887 (finding that "waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated"); *see also PPG Indus.,* 128 F.3d at 107 (finding that a party may waive its right to arbitrate when it "engages in protracted litigation that prejudices the opposing party"). First, we will consider whether the claims before this Court involve the same legal and factual issues as those asserted in the state court action. Then, if necessary, we will consider whether plaintiff would be prejudiced in the state court action if she is compelled to arbitrate her current claims.

The claims before this Court are based on: (1) violations of Title VII and the NYSHRL, due to MMZ's alleged discrimination against plaintiff; and (2) violations of the ECPA, due to MMZ's alleged interception of plaintiff's personal e-mails. (Complt. ¶¶ 58-84.) In the state action, MMZ alleges that plaintiff solicited its customers for purposes of selling commercial insurance either prior to or immediately after the termination of her employment, in violation of the Non-Solicitation Agreement. (Lira Decl., Ex. 2 ¶¶ 14, 19.)

12

Although both sets of claims arise within the context of plaintiff's employment at MMZ, they are nonetheless based on different legal and factual issues. The state court claims will be determined by facts related to plaintiff's alleged solicitation of MMZ's clients and whether she breached her obligations under the Non-Solicitation Agreement. On the other hand, the claims before this Court will be determined by facts related to events that occurred during plaintiff's employment, and more specifically within the physical confines of MMZ's office.[6] Furthermore, the claims currently before this Court are statutory in nature, whereas the claims in the state court action are grounded in contract and common law.

While one of plaintiff's claims, namely that defendants' enforcing a covenant not to compete only against plaintiff constitutes unlawful discriminatory action under Title VII and the NYSHRL, is obviously related to defendants' state court claim that plaintiff breached that covenant on the basis that both claims involve the Non-Solicitation Agreement, it cannot be said that both claims present the "same legal and factual issues." *See Distajo,* 107 F.3d at 133 (citing *Gingiss Int'l, Inc. v. Bormet*, 58 F.3d 328, 330-32 (7th Cir. 1995) (finding that a franchisor who had brought an unlawful detainer action against its franchisee had not waived its right to arbitrate other claims brought by the franchisee, including breach of contract, failure to pay royalties and advertising fees, and several Lanham Act claims, because the two suits involved different issues). "Waiver can only occur when a party has previously litigated the *same* claims it now seeks to arbitrate." *Distajo*, 107 F.3d at 133 (emphasis added).

---

[6] In other words, the state court claims focus on plaintiff's actions and whether she was in breach, however, the current claims focus on defendants' actions and whether they have unlawfully discriminated against plaintiff.

13

In light of the foregoing and in view of the strong federal policy favoring arbitration, we find that the state court action does not involve the same legal and factual issues as the claims currently before this Court and therefore conclude that defendants did not waive their right to arbitration. *See Gidatex, S.r.L. v. Campaniello Imp., Ltd.*, 13 F. Supp. 2d 420, 427 (S.D.N.Y. 1998) (quoting *Distajo*, 107 F.3d at 133) (noting that "a contrary approach would 'effectively abrogate an arbitration clause once a party had litigated any issue relating to the underlying contract containing the arbitration clause' in contravention of the federal policy favoring arbitration agreements"); *see also PromoFone, Inc. v. PCC Mgmt.*, 224 A.D.2d 259, 259-60, 637 N.Y.S.2d 405 (1st Dep't 1996) (noting that "litigation of separate and distinct claims, even if involving overlapping factual issues arising from a common agreement, . . . , does not constitute waiver" of the right to arbitrate); *Sherrill v. Grayco Builders, Inc.*, 64 N.Y.2d 261, 273, 475 N.E.2d 772, 486 N.Y.S.2d 159 (1985) (noting that "[w]here claims are entirely separate, though arising from a common agreement, no waiver of arbitration may be implied from the fact that resort has been made to the courts on other claims").

Accordingly, because defendants did not waive their right to compel arbitration, it is not necessary for us to consider whether plaintiff would be prejudiced in either the state court action or in the arbitration of her current claims. *See Distajo*, 107 F.3d at 133 (noting that the court need not reach the question of whether the non-moving party would be prejudiced, unless it first determines that the other party has waived its right to arbitrate).

## CONCLUSION

For the foregoing reasons, defendants' motion to compel arbitration is granted. Accordingly, plaintiff Zappone's claims are dismissed from this action with prejudice and the parties are directed to proceed with arbitration as soon as is practicable.

SO ORDERED

Dated: White Plains, New York
       June 24, 2005

_____
Sr. United States District Judge